Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6740 | **DATE** | 12/14/2000 |
| **CASE TITLE** | David Jackson vs. Northeastern Illinois University | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendant's motion for summary judgment is granted. The status hearing set for 12/22/00 is stricken. Any pending motions are moot.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 18 2000 date docketed | 27 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | FILED FOR DOCKETING | 12/14/2000 date mailed notice | |
| | Copy to judge/magistrate judge. | 00 DEC 15 AM 11: 44 | | |
| GL | courtroom deputy's initials | Date/time received in central Clerk's Office | GL mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID JACKSON,                          )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )   No. 99 c 6740
                                        )
NORTHEASTERN ILLINOIS UNIVERSITY,       )
                                        )
            Defendant.                  )

DOCKETED
DEC 18 2000

MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

Plaintiff David Jackson, an African American male, brought a complaint against defendant Northeastern Illinois University ("defendant") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. He alleges one count of racial discrimination and one count of retaliation, based on events which occurred and are allegedly still occurring during his employment with defendant. Defendant moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment. As explained below, we grant the motion.[1]

## BACKGROUND

The following facts are undisputed. Plaintiff began working for defendant on November 16, 1994 as a Building Service Worker. On May 30 and June 6, 1996, plaintiff met with Dr. Margo Smith ("Smith"), defendant's Affirmative Action Officer, to discuss several incidents relating

---

[1]Because we grant defendant's motion for summary judgment we deny as moot defendant's motion to strike plaintiff's exhibits to his Local Rule 56 statement. Even if this were not the case, plaintiff's exhibits fail to present any specific facts that would lead us to conclude that there are any genuine issues of fact for trial. We disregard plaintiff's affidavits because they merely restate the allegations of the complaint and because they are devoid of specific facts which support the allegations of the complaint.



to his employment. Smith referred plaintiff to Gloria Carter ("Carter"), the Director of Personnel. On June 18, 1996, plaintiff discussed his concerns with Carter including a claim that his sub-foreman, Norman Gagnon ("Gagnon"), had verbally harassed him.[2] After discussing the issues, Carter instructed Richard Henry ("Henry"), Superintendent of Building Services and Gagnon's supervisor, to investigate plaintiff's allegations. On June 25, Gagnon approached plaintiff because Gagnon had learned that plaintiff filed an Affirmative Action Complaint against him. A confrontation ensued, and ended with plaintiff punching Gagnon. On June 26, plaintiff was placed on administrative leave with pay for striking Gagnon, and on August 13, 1996, plaintiff was placed on suspension pending discharge.

Meanwhile, on July 3, 1996, plaintiff also filed an Affirmative Action Office Discrimination Complaint Form alleging that Lieutenant Leenher and Officer Hamideh, of the Department of Public Safety had discriminated against him based on his race in connection with his arrest on June 25, 1996, after the altercation with Gagnon. Plaintiff's complaint claimed that the two officers discriminated against him because they arrested him and would not allow him to file a criminal complaint against Gagnon, but allowed Gagnon to file a criminal complaint against plaintiff. After Smith investigated this complaint, she reported her findings to Peter Wollstein ("Wollstein"), then Vice President for Administrative Affairs, who found no basis for plaintiff's claim. Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on or about August 1, 1996 alleging racial discrimination and retaliation because of "discriminatory discipline he received and in differing terms and conditions." (Pl. Complaint, ¶ 4).

Plaintiff appealed his suspension pending discharge to the University Civil Service Merit Board (the "Merit Board"). On January 22, 1997, the Merit Board found that defendant had failed to establish just cause for discharge against plaintiff and ordered plaintiff's reinstatement without

---

[2]No allegation of race discrimination was made against Gagnon by plaintiff at this time.

2

loss of compensation. Defendant appealed the Merit Board's decision to the Circuit Court for Champaign County which reversed the Merit Board's decision and ordered plaintiff's discharge in August 1998. Plaintiff then appealed the Circuit Court's decision to the Illinois Court of Appeals, Fourth District, which reversed the Circuit Court on April 30, 1999 and affirmed the Merit Board's decision to reinstate plaintiff.[3]

On July 7, 1997, after his reinstatement, plaintiff received an oral reprimand for unauthorized and unexcused absences. On August 19, 1997, plaintiff was issued a written reprimand for continued unauthorized and unexcused absences and a second written reprimand on February 13, 1998 for failure to respond to a lawful request for information from a University peace officer. Plaintiff received at least two unsatisfactory section inspection sheets for poor performance and at least eight records of counseling for poor performance of his duties and for unauthorized absences. Neither unsatisfactory section inspections nor records of counseling are considered disciplinary.

On May 7, 1998, plaintiff filed an Affirmative Action Office Discrimination Complaint Form alleging racial discrimination by three of defendant's employees with respect to these reprimands, inspections and records of counseling. On July 21, 1998, after Smith investigated, plaintiff's complaint was dismissed. Plaintiff also filed a complaint of employment discrimination based on race with the City of Chicago Commission on Human Relations which is still pending. Plaintiff received a right to sue letter from the EEOC on July 19, 1999, and so his case is properly before us today.

---

[3]After being reinstated early in 1997, plaintiff continued to work for defendant throughout the appeal by defendant of the decision to reinstate plaintiff and throughout the appeal of the decision to again have plaintiff discharged.

3

**DISCUSSION**

Summary judgment is proper only when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, we must evaluate the admissible evidence in the light most favorable to the nonmoving party. *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). The party opposing the motion for summary judgment must affirmatively demonstrate that there is a genuine issue of material fact that requires trial. Fed. R. Civ. P. 56(e); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (1994). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). However, if the evidence is merely colorable, or is not sufficiently probative, the court may grant summary judgment. *Id.*, at 249-50.

There are two ways for a plaintiff to establish actionable discrimination: by presenting direct evidence of an illegal motive, *see Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997); or by utilizing the McDonnell Douglas burden-shifting analysis "to raise an inference of illegal motive." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817 (1973). Because plaintiff has not produced any direct evidence that defendant violated Title VII,[4] his discrimination claim must satisfy the McDonnell Douglas test in order to survive summary judgment. *See Essex*, 111 F.3d at 1309.

Plaintiff must first establish a prima facie case of racial discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie case of racial discrimination, plaintiff must

---

[4]Plaintiff makes statements such as: "Lt. Leenheer was heard to make racial slurs about black co-workers, indicating he hated working with these . . . niggers." (Pl. Opp., p.3). He also provides conclusory statements such as: "Connolly also treated blacks differently than whites." (Pl. Rule 56 Stmt., ¶90). However, these statements, unsupported by any evidence, are not direct evidence of discrimination.

4

demonstrate that: (1) he is within a protected class; (2) he was meeting his employer's expectations; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside his classification more favorably. *See Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 158-59 (7th Cir. 1996).

Defendant contends that summary judgment is warranted because plaintiff cannot set forth a prima facie case of race discrimination. Plaintiff satisfies the first and third prongs of the McDonnell Douglas test.[5] As for the other two elements, plaintiff contends that he was in fact meeting defendant's legitimate expectations in his job performance and that similarly situated employees were treated differently. However, defendant argues that there is no evidence that similarly-situated non-African American building service workers were treated more favorably, and second, defendant argues that plaintiff did not perform his job satisfactorily. Because we agree that plaintiff cannot establish a prima facie case of discrimination, we grant defendant's motion.[6]

Defendant contends that plaintiff was not meeting defendant's legitimate expectations when he was placed on administrative leave and later suspended. Defendant initiated discharge proceedings against plaintiff when plaintiff struck his supervisor in the face in 1996. According to defendant, an employee who strikes another employee is violating defendant's personnel rules

---

[5]It is questionable to us whether plaintiff really satisfies the third prong of the test. Given the Circuit Court's decision to reinstate plaintiff, he may not have suffered an adverse action. However, looking at the facts in a light most favorable to the non-moving party, since it is unclear whether plaintiff was truly made whole by the reinstatement, we find that he has satisfied the requirement for showing an adverse employment action.

[6]Plaintiff alleges that the incidents where he received oral and written reprimands, records of counseling and unsatisfactory section inspections were also discriminatory. However, these incidents took place in 1997 and 1998, (1-2 years after filing his complaint with the EEOC). Moreover, they do not grow out of his EEOC claim. Plaintiff's claim filed with the EEOC was based on allegations of harassment by Gagnon and consequences stemming from plaintiff's altercation with Gagnon. His allegations are not reasonably related to the allegations in the EEOC charge and do not grow out of the allegations made in the EEOC charge. Therefore, we disregard these arguments and focus solely on the events that took place before and included in the EEOC claim in considering his claim for discrimination. *See McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996).

and is not performing his duties satisfactorily. The Seventh Circuit has recognized that a physical attack upon a co-worker is an extremely serious offense that justifies a higher degree of accountability than non-physical transgressions. *See Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 394-95 (7th Cir. 1999). Title VII does not vest federal courts with the authority to act as "super personnel departments," or to second-guess employers' good faith business judgments. *See Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 459 (7th Cir. 1999). Therefore, we accept defendant's contention that plaintiff was not living up to defendant's legitimate expectations. Plaintiff disagrees that his action in hitting his supervisor was inexcusable and argues that it is untrue. However, an employee's subjective assessment of his performance does not create a genuine issue of fact as to the employer's contrary evaluation of the employee. *Fortier v. Ameritech Mobil Communications, Inc.*, 161 F.3d 1106, 1114 (7th Cir. 1998). Plaintiff has not come forward with evidence to contradict defendant's evidence that plaintiff acted in a way that did not meet defendant's expectations and has therefore failed to establish the second prong of the prima facie case.

Even if plaintiff could establish that he was performing his job satisfactorily, he has not presented evidence that similarly situated workers outside of the protected class received more favorable treatment. To be "similarly situated", plaintiff must show that employees: (1) held the same or similar employment positions; (2) had similar employment histories; and (3) engaged in similar misconduct giving rise to the employment action. *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 338 (7th Cir. 1993).

Plaintiff fails to show us that similarly situated workers outside of the protected class were treated more favorably. He cites punishment (or lack of punishment) of his supervisors and superiors, but fails to discuss disciplinary action taken against similarly situated employees. Plaintiff argues that he was treated differently from Gagnon with regard to how they were disciplined after their altercation. However, Gagnon is plaintiff's supervisor and the two do not

hold similar employment positions. More importantly, plaintiff generally asserts that other workers in similar employment positions were not given similar treatment, but he provides no evidence that other employees who hit their supervisors were not suspended. Therefore, he has failed to show that any employee engaged in similar misconduct and did not receive the same type of adverse action.[7]

Defendant argues in the alternative that even if plaintiff did establish a prima facie case of discrimination, there is no evidence that defendant's stated reasons for plaintiff's discharge or reprimands are pretexts for discrimination. Once plaintiff establishes a prima facie case of discrimination, the defendant then bears the burden of production to provide a legitimate, non-discriminatory reason for the challenged action. *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000). Once the defendant meets that burden, the plaintiff must establish that the reasons proffered by the defendant were pretextual, by presenting direct evidence that his race played a role in the challenged action or indirectly by creating a genuine issue of material fact regarding the sincerity of the proffered reasons for that action. *Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir. 1995). We have already stated above that defendant's proffered reasons for initiating discharge proceedings against plaintiff were legitimate and acceptable. Therefore, unless plaintiff can show defendant's reasons are pretextual, we must grant summary judgment.

To prove pretext, plaintiff must squarely rebut the specific reason for the challenged action articulated by the defendant. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 349 (7th Cir. 1997). The question is whether the employer honestly believes its proffered reasons for discharge.

---

[7]Plaintiff's only arguments concerning similarly situated employees concern only those incidents he complains being disciplined for in 1997 and 1998. For example, he argues that when a co-worker was absent for his mother's death, the co-worker was not written up, but that when he was absent for a funeral, plaintiff was written up. (Pl. Opp., p.3). However, plaintiff does not indicate that the co-worker's absence was unexcused or unauthorized. In any event, this argument is irrelevant to the charge of discrimination we are concerned with here today because it has nothing to do with plaintiff's altercation with Gagnon.

*Sample v. Aldi, Inc.*, 61 F.3d 544, 548 (7th Cir. 1995). It is the "perception of the decision-maker" that controls the pretext analysis. *See Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337-38 (7th Cir. 1991), quoting *Weihaupt v. American Med. Ass'n*, 874 F.2d 419, 428 (7th Cir. 1989). Thus, plaintiff must present evidence that defendant is insincere when it claims to have suspended him for striking his supervisor in order to prevent summary judgment. Plaintiff has failed to show us that there is any reason to question the sincerity of the reasoning behind defendant's decision. Defendant's reasons for plaintiff's suspension are credible and supported by the facts and were sufficient to motivate the action. In any event, we find that the defendant's decision to suspend plaintiff was not unreasonable.

Plaintiff also makes a claim of retaliation against defendant, but he fails to make out a prima facie case of retaliation under Title VII, under which he must show: (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse action; and (3) that there is a causal link between the protected activity and the adverse action. *Essex*, 11 F.3d at 1304. An "adverse employment action" alters the "terms or conditions" of one's employment. *Silk v. City of Chicago*, 194 F.3d 788, 804 (7th Cir. 1999). It "constitutes a significant change in employment status . . . ." *Silk*, 194 F.3d at 804 n.16 (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Generally, a causal link can be established through evidence that the adverse employment action took place "on the heels of protected activity." *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994). A close temporal connection between the two events "is generally enough to satisfy the third [prong] of the prima facie test." *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997).

It is undisputed that plaintiff engaged in a protected activity first by complaining to the Affirmative Action officer that Gagnon had "verbally harassed" him, second by complaining again against the officers that arrested him after the altercation with Gagnon and finally, by filing the

1996 EEOC charge.[8] It is also undisputed that his leave and suspension constitute adverse employment actions within the meaning of Title VII. The only issue then, is whether plaintiff can demonstrate a causal link between the protected activities and his suspension.

Plaintiff alleges that he was attacked by his supervisor in 1996 in retaliation for complaining of harassment. (Pl. Opp., p.9). He also alleges that he was suspended for making the complaint. First, however, plaintiff has failed to present any facts that could lead a reasonable jury to conclude that Gagnon "attacked" him. We cannot question the credibility of so many witnesses whose version of the facts are so squarely against plaintiff's. Second, and more importantly, it is clear that though Gagnon confronted plaintiff and asked plaintiff if he had complained about Gagnon, plaintiff eventually struck Gagnon and it was this action that led to plaintiff's suspension, not plaintiff's complaint against Gagnon. Plaintiff shows us no nexus between the adverse action he complains of the protected activity he participated in, and therefore, he has failed to make out a case for retaliation.

## CONCLUSION

After an altercation with his supervisor, plaintiff was suspended by defendant, and then subsequently reinstated. Plaintiff argues that defendant's response to his actions was motivated

---

[8]Plaintiff also claims that the reprimands and unsatisfactory reports he received were in retaliation for filing his EEOC claim. First, reprimands and poor performance evaluations do not significantly alter employment status, because they are considered non-disciplinary, hence these actions do not qualify as adverse actions. Secondly, each of these reprimands, reports, and counseling were for specific incidents, not related to the filing of the EEOC claim. We can find no link between reprimands for unexcused absences, unsatisfactory section inspections, and plaintiff's claim that he was being discriminated against when he was punished for an incident with a supervisor. Finally, the Seventh Circuit has held that as the span of time increases, the likelihood of a causal link between an adverse action and a protected activity diminishes. *See, e.g., McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 485 (7th Cir. 1996); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (five months too long); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four months). Therefore, even if these actions were considered adverse, plaintiff filed his claim in August, 1996, and the actions he complains of took place in July and August, 1997 and February, 1998. For all these reasons, we find that plaintiff would not succeed in a claim for retaliation even if we were to consider his later charges.

9

by plaintiff's race and his complaints about discrimination. We disagree. Defendant proffered legitimate, non-discriminatory reasons for suspending plaintiff, and plaintiff failed to introduce any evidence demonstrating the defendant's explanation was a pretext for racial discrimination or retaliation. Plaintiff is unable to establish a prima facie case of discrimination or retaliation. For these reasons, we grant defendant's motion for summary judgment. It is so ordered.

_____
Marvin E. Aspen, District Court Judge

Dated: 12/14/00